UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAMON SAUL SILVA, JR,

Plaintiff,

v.

BENJAMIN SANDERS,

Defendant.

CASE NO. 2:21-CV-472-RAJ-DWC

REPORT AND RECOMMENDATION

Noting Date: March 4, 2022

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendant Benjamin Sanders' Motion for Summary Judgment. Dkt. 32.

After reviewing the relevant record, the Court finds Defendant cannot be liable solely because of his supervisory position. Further, there is no evidence to show Defendant participated in or directed the alleged harm, knew of the harm and failed to act to prevent it, or created a policy that violated Plaintiff's right. Therefore, the Court finds no genuine issue of material fact exists regarding Plaintiff's claims. Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 32) be granted and this case be closed.

## I. Background

Plaintiff, a pretrial detainee housed at the King County Jail ("the Jail") during all relevant times, alleges Defendant, the director of Jail Health Services ("JHS"), acted with deliberate indifference by failing to provide Plaintiff with corrective glasses. Dkt. 7. Plaintiff contends Defendant is liable because he is the supervisor of JHS employees and he instructed the employees to follow a policy that denied Plaintiff prescription glasses. *Id*.

Defendant filed the Motion for Summary Judgment on December 15, 2021. Dkt. 32; Dkt. 33-34 (supporting evidence). Plaintiff filed responses to the Motion for Summary Judgment (Dkt. 36, 42), and Defendant filed replies. Dkt. 39, 43.

## II. Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**III. Evidence**

The evidence shows Defendant, as the medical director at the Jail, supervises the JHS staff of medical providers. Dkt. 34, Sanders Dec., ¶ 3. Defendant also provides "direct patient care, review[s] patient records for quality assurance and improvement, and serve[s] as part of the leadership team of JHS." *Id.*

On February 16, 2019, Plaintiff submitted a medical complaint ("kite") complaining of extreme eye pain after coming to the Jail without his glasses. Dkt. 34, Sanders Dec., ¶ 18. Plaintiff was provided with information about obtaining reading glasses. *Id.* Plaintiff continued to complain of eye pain in February and March of 2019. *See id.* at ¶¶ 19-22, 24. He was informed by JHS staff to contact his family or attorney to bring him his glasses and that optometry services were not provided by JHS. *Id.* at ¶¶ 19, 21.

"JHS provides or refers for ophthalmological specialty care to address serious health problems that affect inmates' eyes." Dkt. 34, Sanders Dec., ¶ 4. "Because diseases of the eye are serious health problems, they are within the scope of JHS' medical practice and budgeted services." *Id.* at ¶ 8. However, optometry services, which treat refractive errors,[1] are not included in JHS's scope of medical practice. *Id.* at ¶ 11. "JHS therefore does not have equipment to perform optometry services, does not employ optometrists, does not refer for optometric services, and does not prescribe corrective lenses[.]" *Id.*

[1] "Refractive errors" is "a general term describing a problem focusing, and can relate to shapes and flexibility of the globe (eyeball), the cornea, or the lens. While refractive error affects vision, it is not a disease of the eye, as treatment of refractive error does not require either medical or surgical care." Dkt. 34, Sanders Dec., ¶ 9.

On March 26, 2019, Plaintiff sent Defendant a personal letter requesting eyeglasses, stating that his vision had begun to worsen over the past week. *Id*. at ¶ 25. Defendant responded the next day with suggestions for how Plaintiff could obtain glasses, including submitting a kite for reading glasses or requesting glasses through his legal team. *Id*. "A series of similar exchanges occurred between [Plaintiff] and the JHS staff over following weeks." *Id*.

On April 23, 2019, non-party Advanced Registered Nurse Practitioner ("ARNP") Catherine Schroeder recommend that Plaintiff be evaluated for complaints of damage to his eyes. Dkt. 34, Sanders Dec., ¶ 26. Plaintiff failed to attend the clinic appointment to evaluate his eyes. *Id*. at ¶ 27. Then, on May 7, 2019, Plaintiff was seen by non-party Dr. Roger Higgs. *Id*. at ¶ 28. Dr. Higgs noted Plaintiff's near vision was excellent and Plaintiff's sole concern was seeing things at a distance. *Id*. Dr. Higgs did not note any disease of the eye and determined Plaintiff's reported pain was of unknown etiology. *Id*. The treatment notes indicate Plaintiff complained "of eye pain that is a result of straining eyes as he must constantly use the muscles to focus the lens in his eyes due to poor distance vision." Dkt. 34 at 47. Plaintiff told Dr. Higgs that "the eye pain would be resolved if he had glasses." *Id*. Dr. Higgs reported he would request an ophthalmology consultation, which was scheduled for July 24, 2019. *Id*.; Dkt. 34, Sanders Dec., ¶¶ 28-29.

Plaintiff complained of not being provided with glasses in May and June of 2019. *See* Dkt. 34, Sanders Dec., ¶ 30; *see also* Dkt. 34 at 51, 53. Plaintiff would refuse to go to medical triage for an eye exam and stated that he wanted to document that he was requesting eyeglasses and JHS was not providing glasses. Dkt. 34, Sanders Dec., ¶ 30; *see also* Dkt. 34 at 51, 53.

On July 24, 2019, Plaintiff was evaluated by non-party Dr. Ashley Roldan, an ophthalmologist. Dkt. 34, Sanders Dec., ¶ 32. Plaintiff had a normal eye exam and Dr. Roldan provided Plaintiff with a prescription for a refractive error. *Id*.; Dkt. 34 at 55-56. On September

10, 2019, a competency report noted Plaintiff was wearing glasses. Dkt. 33, Froh Dec., ¶ 15; Dkt. 34, Sanders Dec., ¶ 35. It is not clear from the records who arranged for Plaintiff to obtain the glasses. Dkt. 33, Froh Dec., ¶ 15. There is evidence indicating it was recommended that Plaintiff have an investigator or attorney obtain the glasses for him. *See* Dkt. 33 at 36.

Defendant never personally examined or provided medical care to Plaintiff. Dkt. 34, Sanders Dec., ¶ 17. Defendant's "only direct contact with [Plaintiff] was via [the] written reverse kite on March 27, 2019." *Id.*[2] On July 18, 2019, Defendant also provided a declaration for Plaintiff's state court criminal case explaining the care Plaintiff was receiving while he was in custody. Dkt. 34, Sanders Dec., ¶ 15.

## IV. Discussion

Defendant contends he is entitled to summary judgment because no genuine issue of material fact exists regarding Plaintiff's claims. Dkt. 32. Specifically, Defendant argues he cannot be liable solely because he is a supervisor and Plaintiff has not alleged facts sufficient to show Defendant violated Plaintiff's constitutional rights. *Id.*[3]

### A. *Legal Standard*

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

---

[2] A "reverse kite" is a form JHS staff will send to inmates to provide them with information about their care needs or requests. Dkt. 34, Sanders Dec., ¶ 12.

[3] Defendant also asserts he is entitled to qualified immunity. Dkt. 32. As discussed in this Report and Recommendation, the Court finds there is no genuine issue of material fact remaining regarding Plaintiff's claims. Thus, the Court declines to consider Defendant's qualified immunity argument.

(1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Further, a § 1983 suit cannot be based on vicarious liability alone, but must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

Plaintiff, a pretrial detainee, alleges he was denied adequate medical treatment. Dkt. 7. A pretrial detainee's right to adequate medical care arises under the due process clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018). The elements of such a claim are: (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125.

With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (omitting internal punctuation and quotation marks). " '[M]ere lack of due care' " is not enough; "the plaintiff must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.' " *Id.* (quoting *Castro*, 833 F.3d at 1071).

B. *Analysis*

Plaintiff alleges Defendant is liable under § 1983 because he is the supervisor of the JHS staff. Dkt. 7. A claim may not be brought on the sole theory that a supervisor is liable for the acts

of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658, 691 (1978). Rather, a plaintiff must show the individual defendant participated in or directed the alleged harm, or knew of the harm and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Here, Plaintiff's Amended Complaint contains only conclusory allegations that Defendant is liable because, as the medical director, he is in charge of the medical staff and policies followed by the staff. Dkt. 7 at 6. He also contends Defendant knew about his eye pain and instructed his staff to deny treatment. *Id*. He provides no evidence to support these conclusory statements. As such, these conclusory allegations are not sufficient to survive summary judgment. *See Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state §1983 claims); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Celotex*, 477 U.S. at 324 (the nonmoving party must go beyond his or her own pleadings and designate "specific facts showing that there is a genuine issue for trial"); *Horonzy v. Corr. Corp. of Am.*, 2014 WL 3810430, *11 (D. Idaho Aug. 1, 2014) ("Plaintiff must provide meaningful evidence, more than a mere scintilla, that would tend to prove his assertions in order to overcome summary judgment.").

Furthermore, the evidence fails to show Defendant, individually or in his role as a supervisor, violated Plaintiff's constitutional rights. First, Defendant never personally examined or provided medical care to Plaintiff. Dkt. 34, Sanders Dec., ¶ 17. Defendant's "only direct

contact with [Plaintiff] was via a written reverse kite on March 27, 2019." *Id*. Defendant responded to Plaintiff's request for glasses with a written response and recommendations on how to obtain glasses. *See* Dkt. 34 at 41. Allegations that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, is insufficient to state a § 1983 cause of action. *Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015). As Defendant only responded to a "grievance," the evidence fails to show Defendant's conduct was objectively unreasonable or put Plaintiff at substantial risk of suffering serious harm.

Second, the evidence fails to show Defendant directed his subordinates to violate Plaintiff's constitutional rights or knew of a harm and failed to prevent it. Plaintiff complained that he needed glasses and expressed he was suffering from eye pain and eye deterioration. The Jail does not provide optometry services because refractive errors are not serious medical needs. Dkt. 34, Sanders Dec., ¶ 9. However, the JHS staff provided Plaintiff with recommendations on how to obtain glasses and conducted medical examinations of Plaintiff. *See* Dkt. 34. The record indicates Plaintiff's eye examinations were normal, though he had refractive errors. *Id*. Plaintiff also refused examinations and merely wanted his medical file to reflect that JHS was denying him glasses. Dkt. 34, Sanders Dec., ¶ 30; *see also* Dkt. 34 at 51, 53. Due to his complaints of eye pain, Plaintiff was seen by an ophthalmologist. The ophthalmologist found Plaintiff's eye examination was normal and provided Plaintiff with a prescription for a refractive error. Dkt. 34, Sanders Dec., ¶ 32; Dkt. 34 at 55-56.

The undisputed evidence shows Plaintiff received treatment for his complaints of eye pain. Beyond a refractive error, Plaintiff's eye examinations were normal. Plaintiff declined treatment for his complaints of eye pain and stated he only wanted it noted that JHS was refusing to provide him with glasses. Moreover, Plaintiff has provided no medical evidence showing his eyes deteriorated from February 2019 until August 2019, when he stopped complaining of vision

problems. *See* Dkt. 7; *see also* Dkt. 34, Sanders Dec., ¶ 33 (noting no complaints or comments in medical records regarding Plaintiff's vision after August 8, 2019). There is no evidence showing JHS staff's actions were objectively unreasonable or that their actions exposed Plaintiff to a substantial risk of serious harm.

Plaintiff also provides conclusory allegations that Defendant created and implemented a policy that states the Jail will not provide glasses to inmates. Dkt. 7. There is no evidence Defendant creates policies at the Jail. *See* Dkt. 34, Sanders Dec., ¶ 3 (Defendant supervises JHS staff of medical providers, provides direct patient care, reviews patient records for quality assurance and improvement, and serves as part of the leadership team of JHS). There is also no evidence Defendant implemented a policy that violated Plaintiff's constitutional rights. The Amended Complaint contains only conclusory allegations regarding the implementation of a policy that denies glasses. *See* Dkt. 7. Further, while the Jail does not provide optometry services, Plaintiff was provided with medical treatment and an ophthalmology appointment after Dr. Higgs could not determine the etiology of Plaintiff's eye pain. *See* Dkt. 34, Sanders Dec.; Dkt. 34 (medical records and kites). Plaintiff was provided with a prescription to correct his refractive error. There is no evidence Plaintiff suffered an injury as a result of a policy that declined to provide optometry services and glasses to inmates. As such, there is no evidence any policy resulted in Plaintiff being denied medical treatment or being exposed to a substantial risk of serious harm. Thus, the record does not reflect Defendant created or implemented an unconstitutional policy which an objectively reasonable official would have recognized as unconstitutional. *See Darby v. Los Angeles Cty. Sheriff Dep't,* 2018 WL 6131577, at *8 (C.D. Cal. Jan. 22, 2018 (finding formulaic recitations of the existence of unlawful policies, conducts or habits insufficient to allege a claim); *Weatherspoon v. Dallas County Medical Dep.'t*, 2006 WL 1234825, at *11 (N.D. Tex. May 9, 2006) (finding county defendants not deliberately

indifferent for following a policy that stated inmates were not entitled to receive corrective lenses and glasses were to be provided by family members or friends of the inmate when the plaintiff could not see very far without glasses).

In sum, the evidence shows Defendant did not personally violate Plaintiff's constitutional rights. The evidence also shows Plaintiff's constitutional rights were not violated based on the treatment he received for his complaints of eye pain and requests for glasses. As the evidence fails to show Plaintiff's constitutional rights were violated, Defendant cannot be liable under a theory of supervisory liability. *See Corales v. Bennett,* 567 F.3d 554, 570 (9th Cir. 2009) (finding there cannot be any supervisory liability if without an underlying constitutional violation). Plaintiff has failed to provide evidence refuting Defendant's showing that his conduct, individually or as a supervisor, was objectively unreasonable or exposed Plaintiff to a substantial risk of serious harm. Therefore, Plaintiff has not shown Defendant is liable under § 1983. Accordingly, the Court finds no genuine issue of material fact exists regarding Plaintiff's claims and Defendant is entitled to summary judgment.

## V. IFP on Appeal

Plaintiff is proceeding *in forma pauperis* ("IFP") in this case. Dkt. 4. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Here, Plaintiff fails to identify a genuine issue of material fact showing Defendant violated Plaintiff's constitutional rights when he did not provide Plaintiff with prescription

glasses. Furthermore, Plaintiff has incurred "three strikes" under 42 U.S.C. § 1915(g) and, as Plaintiff has obtained glasses, Plaintiff has not alleged imminent harm in this case. *See Silva v Zaragoza*, Case No. 3:21-cv-5444-BHS-TLF (W.D. Wash.). As such, the Court recommends Plaintiff's IFP status be revoked for purposes of any appeal.

**VI. Conclusion**

In conclusion, the Court finds no genuine issue of material fact exists regarding Plaintiff's claims that Defendant violated his constitutional rights. Accordingly, the Court recommends Defendant's Motion for Summary Judgment (Dkt. 32) be granted. The Court recommends Plaintiff's claims be dismissed with prejudice, Plaintiff's IFP status be revoked on appeal, and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on March 4, 2022, as noted in the caption.

Dated this 15th day of February, 2022.

David W. Christel
United States Magistrate Judge