UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAMON SAUL SILVA, JR., <br><br> Plaintiff, <br><br> v. <br><br> BENJAMIN SANDERS, <br><br> Defendant. | CASE NO. 2:21-cv-00472-JHC <br><br> ORDER RE: REPORT AND RECOMMENDATION |

## I.

### INTRODUCTION

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David W. Christel (Dkt. # 44) and the objections thereto filed by Plaintiff Ramon Silva, Jr. (Dkt. # 45). Plaintiff alleges that Defendant Benjamin Sanders, the Medical Director of Jail Health Services ("JHS"), which provides medical services to inmates at the King County jail, acted with deliberate indifference by failing to provide Plaintiff with prescription glasses. Dkt. # 7. Defendant moved for summary judgment. Dkt. # 32. Magistrate Judge Christel recommends to the Court that it grant Defendant's motion for summary judgment and revoke Plaintiff's *in forma pauperis* ("IFP") status for purposes of any appeal. Dkt. # 44.

ORDER RE: REPORT AND
RECOMMENDATION - 1

Plaintiff objected to Judge Christel's Report and Recommendation (Dkt. # 45), and Defendant filed a response (Dkt. # 46). Plaintiff filed a reply (Dkt. # 47) and Defendant moved to strike the reply (Dkt. # 48). The Court granted the motion to strike the reply. Dkt. # 54. Having reviewed the filings, to the extent set forth below, the Court ADOPTS the Report and Recommendation and GRANTS Defendant's motion for summary judgment.

## II.

### BACKGROUND[1]

Defendant, as the medical director at the Jail, supervises the JHS staff of medical providers. Dkt. # 34, Sanders Dec., ¶ 3. Defendant also provides "direct patient care, review[s] patient records for quality assurance and improvement, and serve[s] as part of the leadership team of JHS." *Id.*

On February 16, 2019, Plaintiff submitted a medical complaint ("kite") complaining of extreme eye pain after coming to the Jail without his glasses. Dkt. # 34, Sanders Dec., ¶ 18; Ex. B. Plaintiff was provided with information about obtaining reading glasses. *Id.* Plaintiff continued to complain of eye pain in February and March 2019. *See id.* at ¶¶ 19–22, 24. JHS staff instructed him to contact his family or attorney to bring him his glasses and that optometry services were not provided by JHS. *Id.* at ¶¶ 19, 21. "JHS provides or refers for ophthalmological specialty care to address serious health problems that affect inmates' eyes." *Id.* at ¶ 4. JHS does not consider refractive errors—a general term to describe issues with focusing—to be "serious health problems" and "JHS therefore does not have equipment to perform optometry services, does not employ optometrists, does not refer for optometric services, and does not prescribe corrective lenses[.]" *Id.* at ¶¶ 9, 11.

---

[1] This background section is derived almost entirely from the Report and Recommendation (Dkt. # 44 at 2–5).

ORDER RE: REPORT AND
RECOMMENDATION - 2

On March 26, 2019, Plaintiff sent Defendant a personal letter asking for an explanation as to why he had not received an eye appointment, explaining that due to his lack of prescription glasses he was experiencing eye pain, headaches, and dizziness, stating that his vision had begun to worsen over the past week, and requesting prescription glasses. *Id.* at ¶ 25. Defendant responded the next day suggesting that Plaintiff submit a kite for reading glasses or request glasses through his legal team. *Id.* Plaintiff continued to write medical kites to JHS complaining of eye pain in the following weeks and JHS continued to advise him that JHS did not provide optometry services and that he should seek prescription glasses through his friends, family, or legal team. *Id.*

On April 2, 2019, Plaintiff moved in King County Superior Court for an order compelling JHS to provide him with glasses. Dkt. # 33, Froh Dec., Ex. D, E. On April 23, 2019, after speaking with the Senior Deputy Prosecuting Attorney on Plaintiff's case, non-party Advanced Registered Nurse Practitioner ("ARNP") Catherine Schroeder recommend that Plaintiff be evaluated for complaints of damage to his eyes. Dkt. # 34, Sanders Dec., ¶ 26, Ex. J. The appointment was scheduled for April 25, 2019. *Id.* Plaintiff's medical record indicates that he failed to attend the clinic appointment to evaluate his eyes. *Id.* at ¶ 27. On April 27, 2019 Plaintiff sent a kite to JHS stating, "I did not refuse my appointment, officers have been denying my visits." Dkt. # 36, Ex. E.

On May 7, 2019, the superior court ordered Plaintiff to try to locate his prescription through an investigator and to use that prescription to obtain glasses. Dkt. # 33, Froh Dec., Ex. F. Also on May 7, Plaintiff was seen by non-party Dr. Roger Higgs who worked for JHS. *Id.* at ¶ 28. Dr. Higgs noted Plaintiff's near vision was excellent and Plaintiff's sole concern was seeing things at a distance. *Id.* Dr. Higgs did not note any disease of the eye and determined Plaintiff's reported pain was of unknown etiology. *Id.* The treatment notes indicate Plaintiff

ORDER RE: REPORT AND
RECOMMENDATION - 3

complained "of eye pain that is a result of straining eyes as he must constantly use the muscles to focus the lens in his eyes due to poor distance vision." Dkt. # 34 at 47.  Plaintiff told Dr. Higgs that "the eye pain would be resolved if he had glasses." *Id.*  Dr. Higgs reported he would request an ophthalmology consultation, which was scheduled for July 24, 2019. *Id.*; Dkt. # 34, Sanders Dec., ¶¶ 28–29.

Plaintiff continued to complain via kites of not being provided with glasses in May and June 2019.  *See* Dkt. # 34, Sanders Dec., ¶ 30; *see also* Dkt. # 34 at 51, 53.  According to his medical records, Plaintiff refused to attend two exams with a triage nurse in June and stated that he wanted to document that he was requesting eyeglasses and JHS was not providing glasses. Dkt. # 34, Sanders Dec., ¶ 30, 31, Ex. N, O.  On July 24, 2019, non-party Dr. Ashley Roldan, an ophthalmologist, evaluated Plaintiff.  Dkt. # 34, Sanders Dec., ¶ 32.  Plaintiff had a normal eye exam and Dr. Roldan provided Plaintiff with a prescription for a refractive error.  *Id.*; Dkt. # 34 at 55–56.  On September 10, 2019, a competency report noted Plaintiff was wearing glasses. Dkt. # 33, Froh Dec., ¶ 15; Dkt. # 34, Sanders Dec., ¶ 35.  It is unclear from the records who arranged for Plaintiff to obtain the glasses or whether they were prescription glasses.  Dkt. # 33, Froh Dec., ¶ 15.

Plaintiff filed a 28 U.S.C. § 1983 lawsuit against Defendant, alleging deliberate indifference under the Eight and Fourteenth Amendments.  Dkt. # 7.  Defendant moved for summary judgment.  Dkt. # 32; Dkt. # 33–34 (supporting evidence).  Plaintiff filed responses to the Motion for Summary Judgment (Dkt. # 36, 42), and Defendant filed replies (Dkt. # 39, 43). Magistrate Judge Christel recommended that the Court grant Defendant's motion for summary judgment.  Dkt. # 44.  Plaintiff filed objections and Defendant filed a response.  Dkt. # 45, 46. Plaintiff filed a reply and Defendant moved to strike the reply.  Dkt. # 47, 48.  The Court struck the reply.  Dkt. # 54.

ORDER RE: REPORT AND
RECOMMENDATION - 4

## III.

## ANALYSIS

A.     Standard of Review

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Standard

Summary judgment is proper only if the evidence, when viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). "Uncorroborated allegations and 'self-serving testimony' will not create a genuine issue of material fact." *Heko Servs., Inc. v. ChemTrack Alaska, Inc.*, 418 F. Supp. 3d 656, 660 (W.D. Wash. 2019) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

The moving party bears the initial burden of informing the court of the basis of its motion and citing parts of the materials in the record that show the absence of a genuine issue of fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of [their] case that [they] must prove at trial." *Galen v. Cnty. Of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.   Qualified Immunity

Both parties raise viable arguments as to summary judgment on Plaintiff's Section 1983 claim. But in any event, Defendant raises a meritorious qualified immunity defense to which Plaintiff does not respond. The Court concludes that, as a matter of law, qualified immunity bars Plaintiff's claim against Defendant and grants summary judgment on that basis.

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Courts should not "define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742. A defendant "'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's

shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "Thus, our 'task is to determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful.'" *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010) (quoting *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136–37 (9th Cir.2003)) (internal quotation marks omitted). "Qualified immunity thus protects 'all but the plainly incompetent or those who knowingly violate the law.'" *J. K. J. v. City of San Diego*, 17 F.4th 1247, 1259 (9th Cir. 2021) (quoting *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020)). "In analyzing whether rights are clearly established, we look to then-existing 'cases of controlling authority' or, absent such cases, to a 'consensus' of persuasive authorities." *Id.* at 1259 (quoting *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021)). "In the absence of binding precedent, courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010). A plaintiff "bears the burden of showing that the right at issue was clearly established." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011)).

Plaintiff claims that, under the Fourteenth Amendment, Defendant was deliberately indifferent in failing to provide him medical care. *See Gardner v. Las Vegas Metro. Police Dep't*, 831 F. App'x 365 (9th Cir. 2020) ("Courts apply an objective deliberate indifference standard to claims of inadequate medical treatment brought by pretrial detainees"); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (when a plaintiff's allegation of a violation of their constitutional right is based on conduct occurring during their confinement as a pretrial detainee, their rights derive from the Fourteenth Amendment, not the Eight Amendment).

ORDER RE: REPORT AND
RECOMMENDATION - 7

Thus, the question is whether there exists clearly established law under the Fourteenth Amendment prohibiting Defendant's conduct.

Binding authority does not establish that Defendant's action, or lack thereof, violated clearly established law. *Colwell v. Bannister*, which addresses a somewhat similar factual situation, is distinguishable. 763 F.3d 1060 (9th Cir. 2014). In *Colwell*, the plaintiff suffered from cataracts that made him blind in one eye. *Id.* at 1063. As a result of his monocular blindness, the plaintiff "ran his hand through a sewing machine on two occasions while working"; "ran into a concrete block, splitting open his forehead"; "regularly hit[] his head on the upper bunk of his cell"; and triggered fights by bumping into other inmates. *Id.* at 1067. Two medical specialists examined the plaintiff and recommended that he receive cataract surgery, but the defendants denied the surgery, citing an administrative policy that provided that an inmate must "endure reversible blindness in one eye if he can still see out of the other." *Id.* at 1068. The Ninth Circuit reversed the trial court's grant of summary judgment in favor of the defendants stating that the defendants' actions were "the very definition of deliberate indifference." *Id.*

There are some similarities between *Colwell* and this case: the medical issue pertains to eyesight and Defendant denied Plaintiff's request for an eye exam and prescription glasses based on a JHS policy. But unlike in *Colwell*—where the plaintiff presumably had no other avenue to access cataract surgery while incarcerated—it is undisputed that Defendant and other JHS staff repeatedly advised Plaintiff that he could ask his family, friends, or legal counsel for prescription glasses. Plaintiff fails to raise a genuine issue of material fact over whether he tried and failed to do so or whether such a course of action was unavailable to him. Additionally, this case involves an approximately three-month delay in receiving an exam and seven-month delay in obtaining

ORDER RE: REPORT AND
RECOMMENDATION - 8

glasses[2] compared to the blanket denial of treatment seen in *Colwell*. Finally, Plaintiff submits no evidence that Defendant denied treatment against the recommendation of medical specialists.

Non-binding cases also suggest that Defendant's actions, or lack thereof, did not violate clearly established law. *See Dorlette v. Wu*, No. 3:16-CV-318 (VAB), 2019 WL 1284812, at *7–9 (D. Conn. Mar. 20, 2019) (granting summary judgment for the defendants when the plaintiff experienced an eight-month delay in receiving prescription glasses despite complaining of pain, eye strain, and headaches during that time because he provided no evidence that the delay had a serious effect on his health); *Davidson v. Desai*, 817 F. Supp. 2d 166, 187–88 (W.D.N.Y. 2011) (granting the defendants' motion for summary judgment where "although Plaintiff maintains that his inability to obtain proper eyeglasses required Plaintiff rely on his outdated prescription lenses, resulting in eyestrain and headaches, . . . Plaintiff fails to allege that such symptoms impaired Plaintiff's daily activities," and where the plaintiff was not prevented from obtaining glasses from "an outside source"); *Weatherspoon v. Dallas Cnty. Med. Dep't*, No. 3:04-CV-1644-BF(H), 2006 WL 1234825, at *11 (N.D. Tex. May 9, 2006) ("The Court finds that an objectively reasonable official considering the law as it existed at the time would not have believed that he was violating Plaintiff's constitutional rights by failing to provide Plaintiff with prescription eyeglasses at UTMB's expense."). Accordingly, the Court cannot conclude that the law was sufficiently definite that Defendant would have known whether he was violating it. *See Kisela*, 138 S. Ct. at 1153 (2018) (Defendant "'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official

---

[2] Though the record does not state that the glasses Plaintiff was seen wearing in September were in his prescription, he does not contend that he still lacks glasses, and there are "no documented complaints or comments in the medical record regarding [Plaintiff's] vision, request for glasses and optometry services, or continued eye pain after August 8, 2019. Dkt. # 34, Sanders Dec. ¶ 33.

in the defendant's shoes would have understood that he was violating it.'" (quoting *Plumhoff*, 572 U.S. at 778–79)).

D.   IFP on Appeal

For the reasons explained by Judge Christel, the Court adopts the Report and Recommendation's recommendation that Plaintiff's IFP status be revoked for purposes of an appeal.

## IV.
### CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

(1)   The Court ADOPTS the Report and Recommendation as to the recommended disposition;

(2)   The Court GRANTS Defendant's motion for summary judgment (Dkt. # 32);

(3)   The Court STRIKES Plaintiff's motion for a ruling on the Report and Recommendation (Dkt. # 58) as moot; and

(4)   The Court directs the Clerk to send copies of this order to the parties and to Magistrate Judge Christel.

Dated this 1st day of July, 2022.

*John H. Chun*
John H. Chun
United States District Judge

ORDER RE: REPORT AND
RECOMMENDATION - 10